917 A.2d 808 (2007)
391 N.J. Super. 201
21-23 SEIDLER ASSOCIATES, L.L.C., and 212 William Associates, L.L.C., Plaintiffs-Respondents/Cross-Appellants,
v.
CITY OF JERSEY CITY, Defendant-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted January 31, 2007.
Decided March 16, 2007.
*809 William C. Matsikoudis, Corporation Counsel, for appellant/cross-respondent (Nora L. Kallen, Assistant Corporation Counsel, of counsel and on the brief).
Meyner & Landis, Newark, for respondents/cross-appellants (William J. Fiore, on the brief).
Before Judges LEFELT, PARRILLO and SAPP-PETERSON.
The opinion of the court was delivered by
LEFELT, P.J.A.D.
Plaintiffs, 21-23 Seidler Associates, L.L.C., and 212 William Associates, L.L.C., hold tax sale certificates, respectively, for 342 Forrest Street and 134 Bostwick Street in Jersey City. Plaintiffs, in an action to quiet title, sought summary judgment invalidating Jersey City tax liens for demolition costs filed against the two properties. Plaintiffs argued that the liens were invalid because the City failed to comply with applicable statutory notice requirements. See N.J.S.A. 40:48-2.5, -2.7; N.J.S.A. 54:5-12. The chancery judge invalidated the demolition lien on the Forrest Street property for failure to provide proper notice, but refused to invalidate the demolition lien on the Bostwick property. Accordingly, the City appeals the order invalidating the Forrest Street lien, while plaintiffs appeal the order denying invalidation of the Bostwick lien. We conclude that the City failed to provide proper notice for both demolition liens, and, therefore, we affirm on the City's appeal and reverse on plaintiffs' appeal.
Plaintiffs assert that on February 17, 2004, Seidler Associates acquired, by assignment, two tax sale certificates, No. 222207 and No. 261391, against the Forrest Street property. Although the City had allegedly demolished premises at that location sometime during 2002, the demolition charges were not recorded against the property until April 22, 2004, which was approximately two months after Seidler Associates had acquired the tax sale certificates and two years after the demolition.
Plaintiffs also assert that on May 26, 2004, William Associates acquired, by assignment, a tax sale certificate No. 191577 against the Bostwick property. Although the city had demolished the premises at that location after September 1999, it allegedly failed to provide any notice of the demolition proceedings to William Associates or its predecessor-in-title.
Plaintiffs' principal, Mark S. Kasson, certified that before plaintiffs acquired the tax sale certificates for the two properties, he requested tax redemption statements from the City's tax collector's office. Kasson certified that the statements he received did not disclose the demolition liens *810 at issue, and accordingly plaintiffs did not have notice of the liens at any time before acquisition of the certificates.
According to Kasson, with respect to the Forrest Street property, the City provided no notice of the demolition proceedings until the City recorded its demolition lien, three months after Seidler Associates had acquired the tax sale certificates and approximately two years after the demolition had occurred.
Kasson further asserted that tax sale certificate No. 222207 was originally issued to Capital Asset Research Corporation, and then assigned to "FUNB as Custodian for FUNDCO." FUNDCO was the record owner of this certificate when the demolition order was issued and when demolition occurred. Although the City attempted to serve FUNDCO with notice of the demolition order by regular and certified mail, these mailings were returned as "not deliverable." Regarding the second tax sale certificate, No. 261931, owned by Seidler Associates, the City provided no proof of any notice, or even attempted notice, to Seidler Associates' predecessor-in-interest.
With respect to the Bostwick property, a demolition order was issued on September 14, 1999, and demolition occurred between January 2000 and February 2000. The demolition costs were not filed as a lien against the Bostwick property until November 1, 2003, approximately three years after demolition occurred. The City provided no proof of any notice of the demolition proceedings that was served upon William Associates' predecessors-in-interest.
Kasson certified that on September 23, 2003, he obtained a municipal redemption statement for the Bostwick property which did not reflect any demolition lien. Thereafter, on May 26, 2004, William Associates acquired the Bostwick tax sale certificate, allegedly without knowledge of the demolition lien that had been filed approximately seven months earlier on November 1, 2003, which was less than two months after Kasson had requested the redemption statement.
The chancery judge found inadequate notice with respect to the demolition lien against the Forrest property. However, the judge upheld the lien against the Bostwick property because William Associates failed "to act with due diligence" to discover this lien, which was recorded before the tax sale certificates were assigned to William Associates.
The appeals by the City and plaintiffs present the following issues: (1) whether the chancery judge erred in granting summary judgment to Seidler Associates because plaintiffs did not have standing and summary judgment was premature, and (2) whether the court erred by invalidating only one lien and by failing to grant the City the alternative right of redemption. We address these issues in turn.

I.
N.J.S.A. 40:48-2.5 sets forth the procedures to be followed by a municipality in carrying out demolition proceedings, including the provision of adequate notice to "parties in interest." "`Parties in interest' shall mean all individuals, associations and corporations who have interests of record in a building and any who are in actual possession thereof." N.J.S.A. 40:48-2.4(e). "Parties in interest" are entitled to the protections afforded by the statutory provisions governing demolition proceedings and, therefore, have standing to challenge the validity of municipal actions in carrying out demolition proceedings. Hepner v. Twp. Comm. of the Twp. of Lawrence, 115 N.J.Super. 155, 278 A.2d 513 (App.Div.), certif. denied, 59 N.J. 270, 281 A.2d 532 (1971).
*811 It is not necessary for parties-in-interest to have both possessory and record interests to be entitled to notice of demolition proceedings. Garden State Land Co. v. City of Vineland, 368 N.J.Super. 369, 378, 846 A.2d 625 (App.Div.2004). The purpose of the statute is "to provide adequate advance notice to any party having a readily ascertainable interest in the property, by virtue of its status as an owner, occupant or interest holder of record." Ibid. Assignees of tax certificates, which have been filed, have readily ascertainable interests in the property, especially because the assignee may at some point foreclose upon the property.
Regarding the appropriateness of summary judgment, both parties agreed in the trial court that the matter was ripe for summary judgment. Kasson, as plaintiffs' principal, certified that plaintiffs took assignment of the tax sale certificates for the Forrest and Bostwick properties without any notice of the demolition liens. Kasson explained that before taking the assignment, he had obtained tax redemption statements from the City. These statements did not reveal any demolition liens and were provided to the court. Thus, Kasson had personal knowledge regarding plaintiffs' lack of notice and his verification to this effect was appropriate.
Because any notice the City provided plaintiffs' predecessors-in-title was uniquely within the City's knowledge, it was appropriate for Kasson to certify that on "information and belief" such notice was not provided. If Kasson was mistaken, then it was incumbent upon the City to provide contrary evidence to properly oppose plaintiffs' summary judgment. R. 4:46-2(b).
Furthermore, although the City argues that further discovery was needed before summary judgment could properly be considered, the record does not support this argument. The City did not request discovery of any kind from plaintiffs. During discovery, plaintiffs requested that the City produce proof of all notices provided plaintiffs and their predecessors-in-interest, including copies of demolition complaints, notice of hearings, demolition orders, statements of demolition costs, as well as proof of service. The City failed to produce documentary evidence proving that notice was served in compliance with the statutory notice provisions. There was nothing to suggest that further discovery might lead to proof of any additional notice provided by the City.

II.
Regarding the merits of the chancery judge's decision concerning the Forrest and Bostwick properties, we first note that the statutes governing demolition proceedings impose upon municipalities the obligation to notify all parties in interest of demolition proceedings before any demolitions occur. Specifically, N.J.S.A. 40:48-2.5(b) provides in pertinent part that "whenever it appears to the public officer . . . that any building is unfit for human habitation or occupancy [and upon preliminary investigation requires demolition] the public officer shall . . . issue and cause to be served upon the owner of and parties in interest in such building a complaint stating the [demolition] charges . . . and containing a notice [of hearing]." N.J.S.A. 40:48-2.5(b).
Furthermore, the complaint must advise the owner and parties-in-interest of their "right to file an answer to the complaint and to appear in person, or otherwise, and give testimony. . . ." Ibid.
Following a hearing, if the building is found unfit, the public officer must serve an order upon the owner and parties-in-interest requiring repair or demolition by *812 the owner within a reasonable time. N.J.S.A. 40:48-2.5(c)(1),(2).
The complaint and demolition order must be properly served under N.J.S.A. 40:48-2.7, which requires that the owner and parties-in-interest be served personally or by registered mail. In the event the public officer cannot ascertain the whereabouts of such parties "in the exercise of reasonable diligence," the officer must make "an affidavit to that effect" and then serve the complaint or order by publication. N.J.S.A. 40:48-2.7. In such a case, a copy of the complaint or order "shall be posted in a conspicuous place on premises affected by the complaint or order," and a copy thereof "shall be duly recorded." Ibid. If the owner and parties-in-interest fail to comply with an order to repair or demolish, the public officer may take action to have the building demolished. N.J.S.A. 40:48-2.5(e).
Following demolition, the public officer must file a detailed statement of the demolition costs with the tax assessor to be recorded as a lien against the property, and send a copy thereof by registered mail to the owner. N.J.S.A. 40:48-2.5(f)(2).
We have strictly construed these provisions. Compare Hepner, supra, 115 N.J.Super. at 160-63, 278 A.2d 513 (finding three notices provided an assignee of a tax lien insufficient because not in strict compliance with the statute) with Harrison v. Long Beach Twp., 21 N.J.Super. 605, 91 A.2d 510 (App.Div.1952) (finding that the township strictly complied with the demolition notice requirements but plaintiff failed to take any action).
In Garden State, supra, 368 N.J.Super. at 372, 377-79, 846 A.2d 625, as another example of our strict construction of this statute, the court held that a demolition lien was not enforceable against the plaintiff, an assignee of tax sale certificates, because the city failed to provide the plaintiff with notice of the demolition proceedings under N.J.S.A. 40:48-2.5. Even though plaintiff did not dispute that the city had provided its principal with verbal notice of its intent to demolish the structure, id. at 376, 846 A.2d 625, the notice prescribed by statute was provided only to the record owner. Id. at 374, 846 A.2d 625.
In rejecting the city's argument in Garden State that the plaintiff was not entitled to service of process in the demolition proceedings, we stated that persons having an ascertainable interest in the property must "be given the opportunity to contest the charge of unfitness of the structure or to make necessary repairs. If demolition is required, these private parties would have the opportunity to make the necessary arrangements, in a manner and at a cost satisfactory to them." Id. at 378-79, 846 A.2d 625. Thus, the statutory notice provisions provide "the municipality [with] an opportunity to have any necessary repairs or demolition work conducted at private expense." Id. at 379, 846 A.2d 625.
Accordingly, notice was required at three distinct phases of the Forrest and Bostwick demolition proceedings. First, pursuant to N.J.S.A. 40:48-2.5(b), the City was required to serve the owner and any other parties having a record interest, with a demolition complaint stating the charges, specifying the date and location of the demolition hearing, and providing notice of such parties' right to file an answer and to appear. The City was required to serve the complaint by personal service or registered mail, and failing that, by publication. N.J.S.A. 40:48-2.5; N.J.S.A. 40:48-2.7. The City failed to supply any proof that it had served a demolition complaint on plaintiffs' predecessors, then parties-in-interest, with respect to the Forrest and Bostwick properties.
*813 Second, pursuant to N.J.S.A. 40:48-2.5(c), the City was required to serve upon the owner and parties-in-interest a demolition order requiring the repair or removal of the premises within a reasonable time. Again, the City was required to serve the demolition order personally or by registered mail, and failing that by publication. N.J.S.A. 40:48-2.5; N.J.S.A. 40:48-2.7. There was no evidence that the City served the Bostwick demolition order on William Associates' predecessor, then a party-in-interest.
As for the Forrest demolition order, while the City did produce documentary evidence showing that it had attempted to serve the order upon Seidler Associates' predecessor-in-interest, FUNDCO, as well as FUNDCO's predecessor, FUNDB/CARP, this notice did not remedy the earlier deficiency in serving the complaint. Furthermore, the service of the demolition order was inadequate to comply with the requirements of N.J.S.A. 40:48-2.5 and 40:48-2.7. Though the City served FUNDCO by regular and certified mail, the notice was returned as undeliverable because the City did not provide a complete mailing address. Upon return of its mailing to FUNDCO as undeliverable, the City was required to take additional steps prescribed by N.J.S.A. 40:48-2.7 to provide notice. If the City was unable to ascertain the whereabouts of FUNDCO "in the exercise of reasonable diligence," then it was required to make "an affidavit to that effect" and serve the demolition complaint and order by publication. N.J.S.A. 40:48-2.7. The City offered no proof that it did so. In addition, while FUNDB/CARP apparently accepted delivery of the City's mailing, it was no longer a party-in-interest having previously assigned the tax sale certificate to FUNDCO. Absent any evidence that FUNDB/CARP and FUNDCO were related entities, service on FUNDB/CARP was not tantamount to service on FUNDCO.
Notice at the third, and final stage, of the demolition proceedings required that the City file a detailed statement of the demolition costs with the tax assessor to be recorded as a lien against the property, and to send a copy thereof by registered mail to the owner. N.J.S.A. 40:48-2.5(f)(2). The City did not prove service of a detailed statement of costs upon the owner of the Bostwick and Forrest properties before imposition of the demolition liens.
Thus, the City failed to strictly comply with the statutory notice provisions at every stage of the demolition proceedings. As such, the chancery judge properly invalidated the demolition lien against the Forrest property. However, the judge failed to invalidate the Bostwick lien on the same basis because the judge believed that William Associates failed to exercise due diligence in discovering the prior existence of the lien. This was a mistake.
The chancery judge did correctly note, however, that there is "no duty under the statute or case law that requires purchasers of tax sale certificates to conduct a title search as there is in the purchase [of] real property." The judge also correctly noted that there was no specific requirement for a potential assignee of a tax sale certificate to exercise due diligence to discover the existence of a demolition lien.
As we have indicated, we have required the statutory notice provisions governing demolition proceedings to be strictly construed. Indeed, the Hepner and Garden State decisions declined to relieve the respective public entities of their obligations to comply with the statutory notice requirements even though the plaintiffs there had actual notice.
Thus, it was of no moment here that the demolition charges had been filed as a lien *814 against the Bostwick property before William Associates took assignment of the tax sale certificate, or that Kasson, on behalf of plaintiffs, requested a redemption statement approximately eight months before the assignment. William Associates' predecessor was entitled to formal notice of the demolition costs before the demolition lien was recorded. See Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 795, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (holding the State is required to provide notice of actions affecting an interest in property so as to afford interested parties an opportunity to present their objections). Consequently, the City's failure to provide such notice was crucial.
Finally, we reject the City's argument that the judge's failure to grant the City a right of redemption was inconsistent with the purpose of the Tax Sale Law because invalidation of the lien would allow plaintiffs to be unjustly enriched at the expense of the public treasury.
The Tax Sale Law, N.J.S.A. 54:5-1 to -137, "was enacted to encourage the sale and foreclosure of tax lien certificates to assist municipalities in collecting revenue for delinquent real estate taxes and other municipal liens." Caput Mortuum, L.L.C. v. S & S Crown Servs., Ltd., 366 N.J.Super. 323, 334, 841 A.2d 430 (App. Div.2004). "It is generally the expectation that the certificate will be redeemed at a profit to the lien holder." Id. at 335, 841 A.2d 430.
The certificate holder acquires three important rights. The first is to recover the amount paid for the certificate with interest. N.J.S.A. 54:5-32, -58. The second is the right to redeem from any other holder of a subsequently issued tax sale certificate. Realty Sales Corp. v. Payne, 76 N.J.Super. 59, 61-62, 183 A.2d 772 (Ch. Div.1962), aff'd o.b., 78 N.J.Super. 504, 189 A.2d 458 (App.Div.), certif. denied, 41 N.J. 162, 195 A.2d 305 (1963). The third, and most significant right, is to obtain title to the property by foreclosing the equity of redemption of all outstanding interests, including the property owner's. N.J.S.A. 54:5-86.
Nothing in the Tax Sale Law supports subversion of the purchaser's right to foreclose by allowing a municipality to redeem the tax sale certificates where it is precluded from enforcing its demolition lien. Our decision in Garden State is cited as support by the City for its redemption argument. In that case, after invalidating the city's demolition lien because of inadequate statutory notice, the trial court fashioned several alternative equitable remedies to allow the City to otherwise recoup its costs, including the right to redeem the plaintiff's certificates. Garden State, supra, 368 N.J.Super. at 381, 846 A.2d 625. Specifically, we allowed the City to "reimburse [the plaintiff] for the amounts paid to acquire the tax title liens together with any subsequent taxes paid, as well as statutory interest." Ibid. Although we affirmed this remedy on appeal, we noted that plaintiff had not cross-appealed and, therefore, apparently acquiesced in the remedy fashioned by the trial court. Ibid. We concluded, under those circumstances, that the remedy "was fair and reasonable under the circumstances of this case." Id. at 381-82, 846 A.2d 625.
In the current appeal, plaintiffs do not acquiesce in the City's argument, and vigorously oppose it. Significantly, in Garden State, we rejected the city's unjust enrichment claim, id. at 380-81, 846 A.2d 625, which had posited that invalidation of the demolition lien allowed the plaintiff to reap a windfall at public expense. Id. at 380, 846 A.2d 625. In rejecting this claim, we explained that there was no unjust enrichment because the city did not render the demolition service for the benefit of the plaintiff but to preserve the health, *815 safety and welfare of its inhabitants, and it was not reasonable for the city to expect the plaintiff to reimburse the demolition costs because its statutory remedy was limited to the imposition of a lien against the property. Id. at 381, 846 A.2d 625.
Moreover, the remedy the City seeks will chill investment in municipal tax sales. Such a remedy would reassert demolition liens despite the City's failure to comply with the statutory notice requirements. The trial judge noted that the statutory notice requirements were designed to allow parties-in-interest an opportunity to "minimize costs of a demolition or contest the need for a demolition entirely. Neither plaintiffs nor their predecessors were afforded that right." As the trial court further recognized, plaintiffs "would suffer a great injustice" if such a "remedy is employed given that the liens at issue total almost $800,000." Because the demolition liens are invalid, as the City failed to provide the requisite notice, the City should not be permitted to redeem the certificates and deprive plaintiffs of the opportunity to foreclose the property.

III.
In conclusion, for the reasons explained, we affirm the invalidation of the Forrest demolition lien without affording the City an opportunity to redeem the tax sale certificates. We also reverse the summary judgment dismissing plaintiffs' complaint with respect to the Bostwick property and conclude that the demolition lien against that property must also be invalidated on the basis of inadequate notice, without any right by the City to redeem.
Affirmed in part, reversed in part, and remanded for entry of an order consistent with this decision.