**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0071-24

CITY OF LAMBERTVILLE,

    Plaintiff-Respondent,

v.

MERRICK WILSON,

    Defendant-Appellant.

_____

MERRICK WILSON,

    Plaintiff-Appellant,

v.

CITY OF LAMBERTVILLE
and KENNETH ROGERS,

    Defendants-Respondents.

_____

Submitted June 4, 2025 – Decided July 29, 2025

Before Judges Currier and Marczyk.

On appeal from the Superior Court of New Jersey, Chancery and Law Divisions, Hunterdon County, Docket Nos. C-014016-23 and L-0147-23.

Michael T. Hollister (Rothberg, Federman, & Hollister, PC), attorney for appellant.

McManimon, Scotland & Baumann, LLC, attorneys for respondents (William P. Opel and Joshua H. Raymond, on the brief).

PER CURIAM

The controversy between the parties in these cases arose when the City of Lambertville (City)[1] fined Merrick Wilson for structural deficiencies regarding his property. The parties filed dueling complaints in the Law and Chancery Division which were consolidated. Thereafter, the Chancery Division judge granted the City's motions for summary judgment and to dismiss Wilson's complaint. We affirm.

I.

Wilson's property in the City has a single-family residence and two outbuildings on it, referred to as a garage and chicken coop. In October 2018, City officials inspected the property and deemed the outbuildings were unsafe structures under N.J.S.A. 52:27D-132 and N.J.A.C. 5:23-2.32.

---

[1] Defendant/respondent Kenneth Rogers was the Construction Official for the City at the time of these events.

2

A-0071-24

At the time, Wilson had tenants living in the garage. There was no toilet in the garage and Wilson had begun installing a bathroom on the enclosed porch of the family residence. Wilson was ordered to vacate the garage, and a Stop Construction Order was also issued.

On October 26 and November 1, 2018, the City issued Wilson Notices and Order of Penalty for "allow[ing] occupancy [of the garage] prior to receiving a Certificate of Occupancy [(CO)]," and for failing to obtain a construction permit for the work being done on the main residence. He was fined $2,000 and an additional $2,000 under each Notice for each week that the violations remained outstanding.

Wilson filed an appeal with the Construction Board of Appeals (Board). After two days of hearings, the Board issued a written decision in September 2019 in favor of the City, upholding the Notice of Unsafe Structure, and Notice and Order of Penalty for the garage with the $2,000 fine. The Board also upheld "[t]he Stop Construction Order and Notice of Penalty for the performance of construction on the primary residence" reducing the fine from $4,000 to $2,000.

Wilson did not pay any of the assessed penalties or secure a CO. The City again inspected the property in February 2023, and issued a Notice of Unsafe Structure, after observing tenants in both outbuildings without a CO. Wilson

A-0071-24

was ordered to vacate the Property by February 9, 2023, and notified that failure to comply with the order could result in penalties up to $2,000 per week. A Notice and Order of Penalty was also issued for failing to obtain a construction permit and allowing occupancy prior to receiving a CO. Wilson was fined $2,000 for each violation for a total of $6,000 per week.

Wilson again appealed to the Board. At the ensuing hearing, Rogers produced a lease between Wilson and a tenant for the garage, which specifically referenced it did not have a toilet. In May 2023, the Board reaffirmed its earlier decision and upheld the Notices of Unsafe Structure and Order of Penalty for both outbuildings for performing work without construction permits, changing the use of the building without acquiring approvals, and allowing occupancy as dwelling units.

However, before the Board issued its decision, Wilson filed a complaint in April 2023 against the City and Rogers in the Law Division, alleging the Board did not issue a written decision. In September 2023, the City filed a verified complaint and Order to Show Cause against Wilson in the Chancery Division. The City sought (1) to declare the property unsafe and to permit the demolition of the structure pursuant to N.J.S.A. 52:27D-131.1 and City Code

4

Chapter 10-2.5; (2) $492,000 in accrued fines and penalties in addition to the continuing accrual rate of $4,000 per week; and (3) attorney's fees and costs.

Wilson answered the complaint and served a certification opposing the Order to Show Cause. Wilson stated that both outbuildings contain plumbing but not toilets. He further certified that "the tenants of both [outbuildings are] . . . explicitly advised . . . that toilet and shower facilities are accessible in the principal structure and the rent charged reflected that condition." He also certified that he "stopped construction of the exterior toilet on the principal structure in October 2018, when the City issued the original Notice."

The City moved to dismiss the Law Division complaint, or in the alternative, for consolidation of the cases. The Chancery Division judge denied the order to show cause and consolidated the cases in the Chancery Division.

After discovery, the City moved for summary judgment on both complaints. In a well-reasoned written opinion issued with an accompanying order on August 2, 2024, the court granted the City's motions.

In considering the Law Division action, the court noted Wilson did not oppose the dismissal of that complaint and the complaint did not set forth any viable cause of action because it was filed before the Board even issued its decision.

5

In addressing the Chancery Division action, the court considered the applicable statutes and determined that after the outbuildings were deemed unsafe, Wilson did not comply with the issued notices to remove and therefore the City had the statutory authority to remove or demolish the structures. The court noted the outstanding penalties totaled $588,000 but reduced them to $172,000. Judgment was entered for the City in that amount and both complaints were dismissed.

## II.

On appeal, Wilson contends the court erred in calculating the penalty amount, and its decision ordering the demolition of the outbuildings is not supported by the applicable law.

We review the trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

A-0071-24

Wilson contends "[t]he trial court's calculation of damages contravenes public policy and N.J.S.A. 40:49-5," and that weekly penalties are not an authorized sanction. The City responds that, as before the Chancery Division, Wilson relies on the wrong statute. The City imposed the fines under N.J.A.C. 5:23-2.31(a).

In its decision, the court noted the parties' arguments and the City's reliance on N.J.A.C. 5:23-2.31(a) that permits continuing penalties and stated:

> [E]ven if the weekly penalties are permitted under the Uniform Construction Code, the court finds the penalty assessments to be unnecessarily punitive and inequitable under the circumstances.
>
> The chief aim of imposing penalties is to prevent continued non-compliance. Here, the City sought to prevent . . . Wilson from allowing the continued occupation of the [o]utbuildings without necessary approvals. . . . That goal was achieved through both the [Board's] 2023 Decision and this court's grant of preliminary restraints. . . . The [Board's] 2023 Decision clearly states "[o]ccupancy in the structures at the Property shall not be permitted until such time as the Owner applies for and acquires [COs] from the City . . . ." . . . . Likewise, the November 2, 2023 Order clearly stated ". . . Wilson, shall not permit tenants or any other persons to occupy the outbuildings on the Property until a [CO] applied for and granted by the City . . . ."
>
> Despite achieving its goal in preventing occupation of the [o]utbuildings, the City continued to impose weekly penalties totaling $8,000 each week. These noncompliance penalties were unwarranted in

A-0071-24

light of the relief achieved. The [Board's] 2023 Decision was executed on June 21, 2023. No penalties for noncompliance should have been assessed subsequent to the City receiving full relief. Therefore, the court reduces the period of imposed penalties to twenty weeks ([February 1, 2023–June 21, 2023]). The total amount of penalties are accordingly reduced to $172,000. The penalties reflect the initial fines of $12,000, plus $8,000 fines assessed for twenty weeks. ($12,000 (initial fines) + (20 x $8,000)) = $172,000.

[(Fifth alteration in original).]

Wilson's reliance on N.J.S.A. 40:49-5 to void continuing penalties is misplaced. The fines imposed on Wilson were issued pursuant to N.J.A.C. 5:23-2.31, as stated in the notices and orders, not N.J.S.A. 40:49-5.

N.J.A.C. 5:23-2.31 provides:

(a) If the notice of violation and orders to terminate have not been complied with, the construction official in addition to any other available remedies likely to bring about compliance, may request the legal counsel of the municipality, or of the joint enforcement agency, or the Attorney General in the case of the State, to institute the appropriate proceeding at law or in equity to restrain, correct, or abate such violation or to require the removal or termination of the unlawful use of the building or structure in violation of the provisions of the regulations or of the order or direction made pursuant thereto.

(b) Penalties:

1. Any person . . . shall be subject to a penalty if that person:

A-0071-24

i. Violates any of the provisions of the act or the regulations;

ii. Constructs a structure or building in violation of a condition of a building permit;

iii. Fails to comply with any order issued by an enforcing agency or the department;

. . . .

3. With respect to (b)1iii above, a person shall be guilty of a separate offense for each day that he fails to comply with a stop construction order validly issued by an enforcing agency or the department and for each week that he fails to comply with any other order validly issued by an enforcing agency or the department. With respect to (b)1i . . . a person shall be guilty of a separate offense for each violation of any provision of the act or the regulations . . . . With respect to (b)1ii above, a person shall be guilty of a separate offense for each violation of conditions of a construction permit.

. . . .

(e) Penalties may be levied by an enforcing agency as follows:

1. Up to $1,000 per violation for failure or refusal to comply with any lawful order, unless the failure or refusal to comply is done with the knowledge that it will endanger the life or safety of any person, in

9

which case the penalty shall be up to $2,000 per violation;

2. Up to $2,000 per violation for failure to obtain a required permit prior to commencing construction or for allowing a building to be occupied without a certificate of occupancy;

3. Up to $2,000 per violation for failure to comply with a stop construction order. . . .

Because the City imposed the penalties under N.J.A.C. 5:23-2.31, and the regulation authorizes weekly penalties for non-compliance, the trial court did not err in upholding the penalties, after a substantial adjustment of the amount assessed.

Wilson also asserts "[the City] did not ask [for n]or present any evidence that demolition of the principal structure[2] and either [outbuilding] was an appropriate remedy. There are no removal orders. There are no demolition orders."

In considering this argument, the court reasoned:

Through the Chancery Division Action, the City seeks to enforce the State Uniform Construction Code Act, N.J.S.A. 52:27D-119[ to -141] . . . (the "Act") and the regulations promulgated thereunder.

---

[2] The City did not seek the demolition of the principal structure.

 A-0071-24

The City argues it is authorized, pursuant to [the Act] and N.J.S.A. 40:48-2.5, to remove or demolish the [o]utbuildings because . . . Wilson has failed to comply with the Notices issued.

N.J.S.A. 52:27D-131.1 states, in relevant part:

a. If the owner of a building or structure fails to comply with a removal or demolition order issued by an enforcing agency . . . the enforcing agency may cause such building or structure to be removed or demolished or may notify the governing body of the need to contract for the removal or demolition thereof . . . . Such removal or demolition shall include the clearance, and any necessary leveling, of the site.

. . . .

Similarly, N.J.S.A. 40:48-2.5(e) provides "if the owner fails to comply with an order to remove or demolish the building, the public officer may cause such building to be removed or demolished or may contract for the removal or demolition thereof . . . . See 21-23 Seidler Associates, L.L.C. v. City of Jersey City, 391 N.J. Super. 201, 208 (App. Div. 2007). . . .

Here, the Property was designated as unsafe in both October 2018 and in February 2023. . . . The City's Construction Officer issued multiple notices and assessed multiple penalties for the unabated violations. . . . The penalties assessed in 2018 have not been satisfied. . . . Wilson has further failed to apply for [COs] for either of the [o]utbuildings, or otherwise comply with the Notices issued. . . . Additionally, . . . Wilson has failed to challenge the City's right to

11

demolish or remove the [o]utbuildings as requested through the City's instant motion. No issue of fact or asserted legal right prevents summary judgment in favor of the City as to their right to remove or demolish the [o]utbuildings.

[(emphasis omitted).]

Wilson received notice of the Chancery Division complaint in which the City requested permission "to proceed with demolition of the structures on the Property." As cited by the Chancery Division judge, N.J.S.A. 52:27D-131.1(a) and N.J.S.A. 40:48-2.5(e) permit the City to request permission to demolish a structure deemed unsafe, upon notice to the owner of the property.

In October 2018, Wilson was ordered to vacate the property by October 26. The Notice stated that the "[s]econdary buildings are not fit for habitation, nor are they approved for habitation." On February 7, 2023, Wilson was again ordered to vacate the property, specifically the outbuildings by February 9, 2023. The notice stated Wilson's occupancy of the outbuildings was in violation of N.J.A.C. 5:23-2.23. He did not vacate the outbuildings, thus failing to comply with the removal order. As a result, the City, in its September 8, 2023 Complaint, requested permission to demolish the structure pursuant to N.J.S.A. 52:27D-131.1.

A-0071-24

The trial court properly granted "summary judgment in favor of the City as to their right to remove or demolish the [o]utbuildings" pursuant to the cited statutes as a result of Wilson's noncompliance.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0071-24